## Case No. 1,415.

### BINGHAM v. RICHMOND et al.

[6 N. B. R. 127.][1]

District Court, N. D. New York. Jan. 9, 1872.

BANKRUPTCY—FRAUDULENT TRANSFERS—INTENT OF CREDITOR.

A creditor who accepts a chattel mortgage with a view to obtain a preference, having reasonable cause to believe at the time that a fraud on the act was intended, and that his debtor was insolvent, will not be allowed to prove his debt in bankruptcy, and likewise loses the lien of his mortgage.

[See In re Richter's Estate, Case No. 11,803; In re Black, Id. 1,458.]

[In equity. Bill by Charles S. Bingham, as assignee in bankruptcy of David S. Wing, against Richmond & Gibbs, to set aside a chattel mortgage, and to restrain proof of debt. Report of referee in favor of complainant.]

---

[1] [Reprinted by permission.]

Scott Lord, for plaintiff.
R. P. Wisner, for debtor.

Opinion of J. D. HUSBANDS, Referee. In this case a bill is filed on the equity side of the court to set aside a chattel mortgage made by David S. Wing, the bankrupt, September tenth, eighteen hundred and sixty-nine, to these defendants, filed in the proper office September eleventh, eighteen hundred and sixty-nine, to restrain the proof of the debt by these defendants. The bill alleges the insolvency of Wing at the time, and the intent by its execution to give the defendants a preference over his other creditors, and to defeat and delay the operation of the bankrupt act, [March 2, 1867; 14 Stat. 534, § 35;] that the defendants accepted such mortgage with a view of obtaining such preference, and that at the time said defendants received such conveyance they had reasonable cause to believe that a fraud on such act was intended, and that said David S. Wing was insolvent. All this as matter of fact is admitted by the stipulation in this case, and the only saving clause is that, "said defendants believed that they were entitled to the preference obtained." In simpler Saxon, they believed that a fraud on the act was intended, and had reasonable cause also to believe in the insolvency of their debtor and that they had a right to commit that fraud on the act because they believed they could. The brief of their learned counsel mistakes in my judgment, when he confounds corrupt motive with their admitted intent. Section 14 of the act preserves the lien of mortgages on chattels made in good faith for present considerations otherwise valid, and passes the title to the assignee of property fraudulently conveyed, who is authorized to assail the bankrupt's fraud. The stipulation necessarily admits that this mortgage lien is not thus preserved. The debtor has been adjudicated a bankrupt and no question arises as to him.

These creditors intended what they did. See reasoning of Woodruff, J., in 4 N. B. R. 79, [Hardy v. Bininger, Case No. 6,057.] And so Hall, J., and other judges have repeatedly held. The belief of a man that he may do what the law forbids, does not cure the illegality of the act. It may, however, save him from the charge of corruption. Before the heavenly vision, Saul believed conscientiously that he might persecute and slay the disciples. On the way to Damascus he learned that this belief furnished no justification. Kohlsaat v. Hoguet, [Case No. 7,919,] was, I apprehend, an action by the assignee to recover the amount of the preference. Blatchford, J., after stating the intent and the doing or suffering by the debtor, says: "the elements on the part of the creditor are the receiving or being benefited by such thing, the having reasonable cause to believe the insolvency of the debtor, and the having reasonable cause to believe that a preference is intended. These six elements must co-exist, but nothing else is necessary to make the transaction void, if challenged by the assignee in due time." The question submitted is, whether the defendants, having taken such a preference in this manner, have a right to surrender it after suit brought by the assignee to challenge it and before answer. No question is made as to the time in which this action is brought. It must be observed in respect to involuntary bankruptcy that by section thirty-nine, what enables the assignee to recover the property conveyed, assigned or transferred, also in express terms declares that the creditor shall not be allowed to prove his debt in bankruptcy, provided such creditor had reasonable cause to believe that a fraud on the act was intended, and that the debtor was insolvent. This case is alleged in the bill to be involuntary, and the stipulation admits it. The stipulation also admits in the language of the section all the proviso requires or declares, and I can discover no escape from the consequence without assuming the function of legislation. It is a penal statute in this behalf, but its language is clear and unmistakable. I never discovered wisdom in attempts on the part of judicial tribunals to wrest the language of a statute to meet a real or supposed difficulty or hardship. I remember that at an early day in England, the statute of limitations was considered by the courts a hard statute. In the time of Croke James decisions were made frittering away some of its provisions. The cooler and wiser judgment of other judges in England and this country construed and gave effect to the statute as it was, and held it to be a statute of repose. I pass on this section as I read it. It interprets itself. It applies in terms to such a creditor as the section itself defines, and relates to involuntary proceedings only. See section thirty-nine and In re Evans [Case No. 4,552.] Why this distinction exists in the act, it is neither my duty nor my prerogative to enquire. Statutes are arbitrary, and when the language is free from all ambiguity and is within the power of the law giver, ita lex scripta est is the only answer the judicial mind can give to criticisms upon it. I think the admitted allegations of the bill bring this case directly within the language and spirit of the act, and that these defendants are therefore not allowed to prove their debt in bankruptcy and the complainant is entitled to the relief he seeks. If they desire to surrender for any other purpose I see no objection to it. I return herewith a stipulation, which, in connection with the bill of complaint, is the testimony in this case.

BINGHAM, (SHEARMAN v.)  See Cases Nos. 12,732 and 12,733.

BINGHAM, (SHERMAN v.)  See Case No. 12,762.